**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-07-260-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| David Stephen Goldfarb, et al., | |
| Defendants. | |

On May 4, 2009, the Court issued an order directing the government to undertake additional efforts to calculate appropriate restitution in this case. Dkt. #966. The government has now obtained affidavits from over 130 victims concerning their losses as a result of Defendants' fraudulent conduct. Summary information from the affidavits was submitted by the government on July 10, 2009. Dkt. #1056. Responses were filed by various Defendants. *See* Dkt. ##1076, 1078, 1080, 1081, 1084. A restitution hearing was held on July 29, 2009. Counsel for the government and all defendants were present. The Court heard extensive oral argument.

**I.     Causation Arguments.**

In their filings and oral arguments, Defendants continue to contend that the Court does not have sufficient information to determine which individuals suffered losses at the hands of Defendants. The Court does not agree. As the Court indicated in its previous order (Dkt. #966), evidence presented at Defendant Goldfarb's trial demonstrated that Defendants engaged in a fraudulent enterprise selling a business model that was not viable. The victims

lost money when they invested in the CORF model. The victims were induced to invest by Defendants' false representations concerning the financial viability of the business model and the promises of substantial returns. The Court does not accept Defendants' assertion that victims lost money because they lacked business acumen, that Defendants' representations were largely true and losses were caused by other problems such as unexpected state laws, or that some of the victims entered this business on the basis of Defendants' truthful representations and the advice of their own counsel rather than Defendants' fraud.

The restitution statute requires Defendant to pay restitution to any person "directly and proximately harmed as a result of the commission of [the] offense." 18 U.S.C. §3663A(a)(2). Restitution may compensate victims only "'for actual losses caused by the defendant's criminal conduct.'" *United States v. DeLaFuente*, 353 F.3d 766, 771 (9th Cir. 2003) (*quoting United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 926 (9th Cir. 2001)).

Restitution claims must be established by a preponderance of the evidence. *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008). The Court may rely on any evidence that possesses "sufficient indicia of reliability to support its probable accuracy." *Id*. District Courts have "a degree of flexibility in accounting for a victim's complete losses." *Waknine*, 543 F.3d at 557. "Congress intended the restitution process to be expedient and reasonable, with courts resolving uncertainties with a view toward achieving fairness to the victim." *United States v. Gordon*, 393 F.3d 1044, 1056 (9th Cir. 2004).

The Court finds by a preponderance of the evidence that the actions of Defendants Ross, Woodcock, and Guenther proximately and directly caused the losses of all victims who have submitted affidavits. These Defendants were principals in the scheme that marketed a non-viable business model. The scheme included clear misrepresentations of the viability of the business model. When individuals invested in the model, they invariably lost money. Evidence presented at trial clearly established that these Defendants conspired to sell CORFs at the expense of the victims.

The Court also concludes by a preponderance of the evidence that Defendants Bonebrake, Marshall, Ongaro, and Nibbler proximately and directly caused the losses of

victims to whom they spoke about the CORF product. As participants in the overall conspiracy, they also proximately and directly caused the losses of other victims. The evidence at trial demonstrated that investors relied not only on the representations of the principals, but also on the glowing recommendations of the shills. The Court rejects Defendants' suggestion that it lacks sufficient information to determine restitution.

## II. Apportionment.

Because all of the Defendants participated in the scheme to defraud, the Court concludes that each of them can be held jointly and severally liable for the losses of all victims. This was a collaborative effort. The Court also concludes, however, that fairness calls for some apportionment of restitution amounts among the Defendants. The Court finds that principal Defendants Ross, Woodcock, and Guenther should be held equally liable for the losses caused by sale of the CORFs. Although it is true that each played a different role in the conspiracy, and that their culpability varied when compared to each other, the Court concludes that each of them played a critical role in creating and furthering the fraudulent venture that caused losses to all victims. Therefore, Defendants Ross, Woodcock, and Guenther will be held jointly and severally liable for $19,249,595 in losses as reflected in Schedule 1 of the government's submission. *See* Dkt. #1056. If, as was suggested at the restitution hearing, some of the victims listed in Schedule 1 continue to operate CORFs purchased from Defendants, the government should eliminate those victims from the calculation.

As was suggested in the Court's previous order (Dkt. #966), the restitution amount to be paid by Defendants Bonebrake, Marshall, Ongaro, and Nibbler will be apportioned based on the number of victims with whom they spoke. Thus, the starting place for this calculation will be the amounts set forth in Schedule 3 of the government's submission. *See* Dkt. #1056. Adjustments to some of the restitution amounts will be identified below. For purposes of distributing actual restitution payments, however, the Court concludes that funds paid by Defendants Bonebrake, Marshall, Ongaro, and Nibbler should be divided among all victims identified in Schedule 1 of the government' submission. The Court finds that, as

1  members of the conspiracy, they proximately and directly caused the losses of all victims,
2  but that the amount of their liability should be apportioned on the basis of the victims with
3  whom they spoke.

**III. Adjustments to Restitution Amounts.**

**A. Defendant Marshall.**

The government agreed at the restitution hearing that losses suffered by the following investors should not be included in Defendant Marshall's restitution amount: Michael Foley, Tom Harris, Joseph Jerbue, Kelly Land, David Meisenburg, James Moorhusen, Steve Phan, Harmohan Sohi, and Peter Sun.

The Court concludes that Michael Vandenberg should not be included in Defendant Marshall's restitution amount. Mr. Vandenberg's affidavit provides no indication as to when he spoke with Defendant Marshall, and the Court therefore cannot conclude that his investment occurred while Defendant Marshall knew the CORF product was not viable.

The Court concludes that Michael Rue should be included in Marshal's restitution amount. Mr. Rue's affidavit reflects that he attended a CORF seminar in March of 2002 and entered into a license agreement in April of 2002, during the time that Defendant Marshall was actively speaking with potential investors and knew of the fraud. Mr. Rue's affidavit reflects that he spoke with Mr. Marshall.

Alfredo Vasquez should also be included in Defendant Marshall's restitution amount. His affidavit clearly shows that he invested substantially more than he received from his sale, and his affidavit specifies that the amount received in the sale was net after lease and legal costs were calculated.

**B. Defendant Ongaro.**

The government agreed during the restitution hearing to exclude the following victims from Defendant Ongaro's restitution amount: Tom Harris, Don Drake, Kelly Land, Steve Phan, Harmohan Sohi, James Williams, Michael Talis, Michael Zundel, Peter Sun, and Michael Silverberg. The government agreed that the amount for Mr. Williams would be adjusted to $185,000 and the amount for Mr. Silverberg would be adjusted to $234,000.

The Court concludes that Michael Vandenberg should not be included in Defendant Ongaro's restitution amount. Mr. Vandenberg's affidavit provides no indication as to when he spoke with Defendant Ongaro, and the Court therefore cannot conclude that his investment occurred while Defendant Ongaro knew the CORF product was not viable.

With respect to victims Robert Harder, John Cunningham, Kurt Cooper, Vincent Brisby, Mark Daly, Joseph Atkinson, Gifty-Annette Dubois, Winfield Pullen, David Van Til, and Aneesh Kumar, the Court concludes that the affidavits of each of these individuals reflect communications with Defendant Ongaro and losses ultimately suffered as a result of their investment. The Court rejects Defendant Ongaro's argument that losses caused when other Defendants refused to refund monies or when other problems arose were not directly and proximately caused by him. As noted above, this was not a viable business model, and Defendant Ongaro was responsible for persuading these individuals to buy into it.

The Court agrees that Myron Nelson should not be included in Defendant Ongaro's restitution amount. His CORF is still operating.

**C.     Additional Victims.**

Affidavits from Gary Brunetti, Mike Madrid, and Kira Oppenheim were submitted during the restitution hearing. Losses suffered by these individuals will be included in the restitution amounts of Defendants Ross, Woodcock, and Guenther. Losses suffered by Gary Brunetti will also be included in Defendant Bonebrake's restitution amount. Losses suffered by Kira Oppenheim will be included in Defendant Nibbler's restitution amount. Losses suffered by Mr. Madrid will be included in the restitution amounts of Defendants Bonebrake and Marshall.

**IV.     Restitution Schedule.**

Each of the Defendants has asserted an inability to pay any significant restitution amount at this time. The Court will require Defendants to make restitution payments on the following schedules:

| | | |
|---|---|---|
| Ross: | $250 per month until incarcerated, $25 per quarter while incarcerated, $500 per month starting 120 days after release from incarceration. | |
| Woodcock: | $250 per month until incarcerated, $25 per quarter while incarcerated, $500 per month starting 120 days after release from incarceration. | |
| Guenther: | $25 per quarter while incarcerated, $500 per month starting 120 days after release from incarceration. | |
| Bonebrake: | $10,000 due within 60 days of this order. | |
| | $500 per month thereafter. | |
| Marshall: | $10,000 due within 60 days of this order. | |
| | $500 per month thereafter. | |
| Ongaro: | $10,000 due within 60 days of this order. | |
| | $500 per month thereafter. | |
| Nibbler: | $5,000 due within 60 days of this order. | |
| | $500 per month thereafter. | |

**V. Proposed Orders.**

The government shall prepare a proposed restitution order for each Defendant. The proposed orders shall reflect the restitution amounts described in this order, with the adjustments required by this order. Each proposed order should reflect the restitution amount required for the Defendant in question, and should provide that payments made by the Defendant will be credited to all victims identified in Schedule 1 (after adjustments noted above) in proportion to the amount of each victims' loss. The proposed orders shall provide that the Court waives the imposition of interest on the restitution amounts. The orders should also provide that payments of criminal monetary penalties should be credited in the priority established under 18 U.S.C. § 3612(c). Counsel for the government shall provide the proposed orders to the Court with supporting adjusted schedules and with copies to all counsel by **August 24, 2009**. Defendants may provide objections to the orders by

**August 31, 2009**. No reply will be required from the government.

DATED this 11th day of August, 2009.

_____
David G. Campbell
United States District Judge